Case number 22-5251. Michael S. Owlfeather-Gorbey aka Tsunamikan Appellant v. Avery Captain U.S.P. Thompson, et al. Ms. Geba, amicus curiae for the appellant. Mr. Dreyer for the appellees. Good morning. Good morning, Your Honor. Erica Hashimoto from Georgetown University's Appellate Litigation Clinic. With the court's permission, third-year law student Sonia Geba will be presenting the argument on behalf of amicus. Thank you. Ms. Geba. Good morning, Your Honors, and may it please the court. This court did not strain its reading of imminent danger in this case. Even the government agrees that Mr. Kahn's acquired blindness from worsening glaucoma poses a danger of serious physical injury. Indeed, Mr. Kahn's advanced and complicated condition has already caused him to lose over 95% of his vision in one eye and over 65% in the other due to delayed and denied medical care. He faces complete, irretrievable loss of the vision that he has left, and while he faces total blindness, he also alleges an ongoing pattern of brutal physical assaults in retaliation for his complaints. In total, his filings detail at least six specific assaults plus two more threats of serious harm by four individuals over a four-month period at USP Thompson. Mr. Kahn has already met the high standard this court has established for imminent danger claims. He has alleged sufficient, specific, factual allegations of serious imminent dangers. The PLRA's 1915A screening device also encourages district courts to dismiss frivolous claims before a case is even docketed. Further, the PLRA's legal constraints that already narrow the imminent danger exception, assessing the seriousness, imminence, specificity, and nexus of allegations precisely at the time of complaint and notice of appeal are more than enough to safeguard this court from meritless suits. Can I clarify something? Yes. I mean, if the lawsuit is not seeking relief from the physical assaults, it's not raising, you know, some sort of Eighth Amendment or other claims relating to the assaults and seeking to get some sort of relief from the assaults, why are they relevant to whether he can bring a lawsuit related to treatment for glaucoma? I mean, isn't the purpose of the imminent danger language to allow somebody who is in imminent danger to file a lawsuit, notwithstanding the fact that they filed three prior frivolous lawsuits, but to file a lawsuit to stop this imminent danger or risk of injury that they're facing? So, Mr. Kahn has sought damages in this case, and that is sufficient, you know, under previous cases, that is a sufficient relief that he could seek for both the assaults and glaucoma. But I didn't read his complaint as raising any claims relating to the assaults. Did I miss that? I believe he did. I might need to check the JA and address on rebuttal. But in his complaint and in the IFP application, I believe he, I mean, throughout his complaint, he brings claims of physical assaults against several different inmates with which he was housed and complaints against staff who refused to take his grievances. So his claims entirely have to do with assault allegations. Okay. Mr. Kahn has sufficiently pled not just one imminent danger, but two. So, as we've mentioned, first, he alleges delayed and denied medical care medications for his glaucoma and access to an ophthalmologist, which is causing impending blindness. This is sufficiently serious under the PLRA's imminent danger exception because it is life altering and disabling. He's already lost 95 percent of his vision in one eye. And he alleges a snuff out syndrome, which his doctors have treated him with or rather addressed in his medical records that creates a massive risk of complete blindness. This is also sufficiently imminent under this court's precedence in Ibrahim. For example, chronic illnesses were recognized as inherently imminent and ongoing. So this is also imminent, his glaucoma related harms. It doesn't appear to be much of a dispute about that for our purposes here. I guess the question I have is, let's suppose I know that you have an argument that we shouldn't take account of additional evidence that's submitted by the government in response to our request to respond. But let's just but you also have an argument that says that even if we did, the imminent danger threshold is still satisfied. And so let's just focus on that part of the argument. Sure. As to that, what what in your mind should we do with the notion that the government points out about his his declining surgery? Well, we point out in our brief in response to that question that in in 2020, as recently as late 2020, he actually underwent surgery, which was unsuccessful. So, you know, the doctors that he's been consulting with in the past before February of 2021, which was the last time that he saw an ophthalmologist, he's he's been able to consult with an ophthalmologist to take surgery or not. That's kind of within the scope of of the patient doctor relationship. And and and so the surgery question is, I think, slightly separate than the core of his allegations that he's being delayed his treatments between five and 20 days of medication at a time, which another provider told him that he shouldn't be receiving or he should be receiving his medications consistently. Daily, he should not go any period of time without his medications. And and this is also a really complicated case. His his glaucoma condition is quite advanced and also complicated by this snuff out syndrome that he mentions in his filings. It's not clear even with the doctors that he has consulted that surgery would be the proper remedy either. It may actually introduce a danger of total blindness as well. So I, I'm I take I appreciate the point that, you know, it's a complicated situation medically and we shouldn't be in the position of trying to step into the shoes of a physician to figure out exactly what the right course of treatment is. But as a more abstract matter, what should we do with situations in which there's something in the record that indicates that an inmate who's complaining about an imminent danger is declining to extricate himself from the dangerous situation, even though something, let's just say, has been offered to him. But he still says he's an imminent danger, but it's apparent from the record that there's a serious question about whether it's his own conduct that's leading him to stay in a dangerous situation. And he has a self-help remedy that he's just been declining. I think with regard to, I mean, surgery, we've already talked about, but let's put that one to a side, but just as a general matter, suppose you have, for example, a transfer in the assault circumstance. Suppose you had a transfer situation and the inmate just refuses to to take a transfer, says he wants to stay in his cell and he wants the other person to be transferred who's been assaulting him. How would we how would we deal with a situation like that? I think this court has certain tools to screen out different kinds of claims, so this court could use some of those tools in that scenario. For example, the court could weigh the specific facts in that scenario and consider whether it's conclusory or ridiculous kind of statement. It could. It could also consider that maybe the harm is not specific enough in that in that situation. Because under this court's precedence, also in Mitchell, a harm needs to be specific enough, a plaintiff needs to allege specific facts, things like dates, people who have committed the harms, and other details for the court to conclude that a harm has occurred and that they are seeking relief from that harm. So, you know, in the case of someone who is not making certain or taking certain actions, I mean, I think in that case, also, they could still be seeking relief like damages, which could be, you know, like, they could still be seeking that. But I think that this court would have to weigh the facts in that situation and consider whether it's a conclusory or speculative kind of harm. Thank you. Let me make sure my colleagues don't have additional questions for you. We'll give you some time for rebuttal. Thank you very much. Thank you. Mr. Stryer. Good morning, Your Honor. May it please the court, Douglas Stryer on behalf of the United States. I want to start with something everyone agrees with, which is that conclusory, fantastic, delusional, irrational allegations of imminent danger do not satisfy Section 1915G's exemption. And I would refer to page five of Mr. Gorby's reply brief or what we just heard at the podium. But where in the statute's text can we derive that principle from? And it's the statute's text that must control. And so 1915G says, unless the prisoner is under imminent danger of serious physical injury, it is the is that is doing the work there. When a prisoner brings irrational or delusional allegations, courts can determine that the prisoner is not under imminent danger, even if he alleges that he is. But that demonstrates that the question for the court is whether the prisoner is in imminent danger, not merely whether he states that he is. Happy to answer any questions the court may have. So the idea that we don't take account of delusional allegations, would that deal with the witches hypothetical that you have in your briefs? It would. And I would also want to point out there's so there's another tool to deal with that. There is. But where does that tool come from? That that's not plucked out of the ether. It has to come from the statute's text. And I think that is in the statute's text where it says is an imminent danger. And I'd also point to if page 24, the joint appendix, his IFP motion states that, you know, Mr. Gorby also owns all of the United States, Mongolia, China, Scotland and Egypt. So this is already a plaintiff who we know is making fanciful allegations. But if there's fanciful allegations about one thing, but then there's also allegations about imminent danger. Do we just should we discount allegations of item in a danger because of other allegations? It shows that the court should look closely. And so I agree in the in the vast, ordinary run of cases, the court will look at the complaint, look at the IFP motion or look at the notice of appeal, depending on what stage we're in. We'll accept the prisoner's well-plaid allegations as true and go from there. But in cases like this one where we're dealing with a prisoner who's filed more than 400 cases and whose own application demonstrates fanciful, delusional allegations. Let's point out the whole point of this complaint to go back to Judge Wilkins. His question is that he believes that there is a conspiracy between all members of the Senate Judiciary Committee, the head of the administrative office of U.S. courts and various Northern District of Illinois judges to conspire against him to interpret Section 1915 G2 narrowly. So it's not just single single lines that I can point to. It is the complaint as a whole. So if the complaint as a whole has some fanciful stuff in it and surrounding it, then let's suppose that it wasn't that case, but he still has all the same things about glaucoma and inmate assaults. Would that would such a complaint that didn't have the fanciful stuff that you're identifying, would that get past the imminent danger bar? Well, so first, there'd have to be an excess. But assuming there is an excess, then I think as if that is the well-plot allegations, that may be enough to get IFP status. But if there is evidence in the record that contradicts that, such as the Moyse declaration or prior judicial opinions saying that it was Mr. Moyse who refused surgery that caused him to get into the situation he did with his glaucoma, the court can consider that. And that even if the court wasn't aware initially, that can be reason to revoke IFP status. Now, one thing I want to point out is this court has a very narrow strike window for what counts as a strike under 1915 G. And it does for good reason. It's because 1915 G is supposed to have consequences and it shouldn't be so easily trounced by a prisoner who can just add allegations of imminent danger that are completely contradicted by the facts. There's a small if there's if there's a nexus requirement, which are decisions established, then the IFP allegations are going to be related to the merits. A minimum, and I'd say it's more than relate to. But yes, you are. So they're at least they're at least bound up with the merits. So those cases can well, if they're that fanciful, we'll go off on the merits anyway. Right. So, I mean, this is where I want to push back at the notion that the government's position is somehow worse for prisoners. What we hear is this desire to oh, well, this case can be disposed of other ways. Mr. Gorby has filed approximately 400 cases. Let's assume for easy math. And I know it's actually much more to file an appeal here in six and in D.C. circuit right now. Well, let's assume that's four hundred dollars per case or appeal. Four hundred times four hundred. That's one hundred and sixty thousand dollars that Mr. Gorby could have owed to the courts if he would have been granted IFP status each time. Now, where I grew up in a small city and what shouldn't be called the Rust Belt. That's enough for a person to buy a nice house for their family. So just believing that, oh, the court can dispose of this the other way. It's not better for the prisoner. And it's also not what's called for in the text. The text of 1915 G asks, is the prisoner in imminent danger? And I think Judge Richardson's concurrence in the Hall opinion from the Fourth Circuit the other the other year. Well, certainly said some things that I would disagree with. But I think it does have a good point, which is unless the prisoner is in imminent danger, then 1915 G doesn't apply. He rejected the addressability idea that you put forward. You rejected the entire nexus idea, including Pinson. So I didn't see it in the text of the statute. Correct. And on that point, I mean, Pinson did settle this in this circuit. But what I would say is Congress had a clear intention with the PLRA, which was to ease the constitutional concern by allowing a prisoner who really was under imminent danger of serious physical injury to get into the courthouse. And so that demonstrates the nexus. And I think you have to read the two parts of the statute together with Congress's purpose in mind to see why the nexus requirement does exist. But that was settled in Pinson. About his allegations of, you know, the beatings by other inmates and the guards, you know, spreading rumors and all of that. What rebuttal did you present with respect to those factual allegations? Sure. One, at the time he noticed the appeal, he was not in a cell with with either of the prisoners at question, Kowalczyk or Riggs. So there was no fear of imminent danger at the time he noticed the appeal. Two, I'd point out to the Moisant Declaration, which goes through the only assault that's really described with specificity as to what happened. I believe it says he was hit with a closed fist, which sounds quite bad. But when we look at what actually happened, when the doctors analyzed him, they saw no fractures, no damage to the soft tissue. And this is just another example of Mr. Borby tending to make allegations that once once they're looked at, just don't hold water. So I'm trying to understand how your legal test would work. So. Let's suppose. The we have a hypothetical where the inmate files frivolous claim after frivolous claim, hundreds of. And the prison officials. According to the complaint and declarations by by the inmate, say that basically we are going to punish you for continuing to harass all of us with your frivolous lawsuits. And in the lawsuits continue to be frivolous and fanciful and all of that, but the allegations which don't get rebutted by the government are that he gets a beating after every single one that he files. And he puts that in his request for IFP status. What do we do with that case where. Where there's no rebuttal that he's being beaten, but yet the case itself, you could say that there's no nexus between the beatings and the allegations in the complaint, because the allegations in the complaint are I want medical marijuana for my glaucoma. Yeah, then we would be in the same situation that led to Pinson, which was a Gorby case as well. And where the court says, look, there is no nexus. And in Pinson, the court said there wasn't even a minimal nexus. It didn't matter what the particular test was for nexus, whatever it was, Mr. Gorby failed to satisfy it. So I think that going the nexus route, which this court has done time and time again, I mean, Mr. Gorby filed, I think, approximately nine appeals in this court in twenty twenty two alone. Repeatedly, the court dealt with Mr. Gorby's allegations by just saying, look, there's there's no nexus here. And so denying IFP status now here, the court invited the United States's position. So we provided a declaration that sets forth. So so so let's suppose we have someone who's filed multiple frivolous complaints prior, but their current complaint is, you know, for religious reasons that are sincerely held. I don't eat pork, but the only food that they are serving to me is pork and I basically have to eat it or I'll starve. And so I'm being compelled to eat pork against my religious beliefs. I'm not in imminent danger in that, like I'm not being beaten, I'm not going to starve, but I am my constitutional rights, my First Amendment rights are being violated there. You would say 1915 G doesn't apply. Right. I mean, I think then the question is assuming assuming there's a nexus there to the claims, then the question is, is does that qualify as a serious physical injury? If the court were to assume it did on the constitutional question, then I think to the extent the court were to grant it, if it was then discovered that these contradictions are just not true, then IFP status could be revoked once presented with contradicting evidence. Now, and I also want to point out the benefit to the prisoner and having IFP status revoked in that situation. If the case was going to be dismissed anyway, which is once IFP status is revoked, they're not going to be on the hook for paying the rest of the filing fee. So it is better for the prisoner if a case is going to be dismissed anyway to have IFP status revoked first. Yeah, we identify that even in our Asamani decision highlighted for the inmate what the possibility would be if he chose to go forward. Exactly. To follow up on Judge Wilkinson's hypothetical, in the situation in which the allegation has to do for imminent danger purposes has to do with ongoing beatings in the cell and then the merits of the suit also deal with that. Even if this is somebody who is a serial frivolous filer, 400 complaints, let's say, but if those allegations are in the complaint and they're, at least with respect to the beatings, they're not rebutted by a response that's solicited from the government, then under your approach, there would be a nexus and IFP status would be granted. I think it would need to demonstrate that there is an imminent danger that the beatings would recur. I think in Asamani in particular, there's a reference that, look, if the pattern gets broken, if there's some reason, say, he has been transferred away from the cellmates in question, as happened here, then there'd be no reason to believe it would recur. And so it wouldn't be an imminent danger at the moment. But if the transfer happens after, I thought that we're supposed to be looking at the nature of the allegations at the time of the notice of appeal. We are at this point, yes. And so if at the time of the notice of appeal, there hasn't been a transfer yet, and it was on a fast track in the district court, it comes up quickly, and the person is still at least in the same facility, or at least there's no reason to think that he's not. Because I think a lot of these situations, there may be no particular reason that the court would know who's supposed to be doing this filtering at an outset. At that point, then there would be a nexus, hypothetically, and the allegations would go to imminent danger, and then IFP status would be granted. Right? I would need to see that in the full context, but in general, I think that that is probably correct. And again, just IFP status could be revoked if it was determined that, indeed, the prisoner wasn't in imminent danger. Okay. Make sure my colleagues don't have any questions.  Thank you, Aaron. Ms. Gabbitt, we'll give you two minutes for rebuttal. Thank you. Your Honors, I'd like to conclude with three short points. First, I think it's been mentioned, but the PLRA makes no distinction between a person, a plaintiff, with four or 400 frivolous claims. Mr. Kahn still has to pay the filing fee only in installments. So he has no interest in bringing an insufficient or conclusory claim here, only to be kicked out at the merit stage when he would still have to pay the filing fee. Second, this case is not conclusory. Mr. Kahn's allegations are not conclusory. This court has an obligation to read his, to construe his allegations liberally. And even under that, even without that construction, I don't think that this court could come to any other determination on the assaults for the notice of appeal, the timing of the assaults for the notice of appeal. Mr. Kahn alleges that he was assaulted on August 28th, two days before his notice of appeal by Mr. Riggs after he was placed in a cell with Mr. Riggs a second time after he had already been assaulted by Mr. Riggs previously. Third, the government has been discussing its affidavit. No matter what the government presents as rebuttal evidence, even if it was incontrovertible or appeared incontrovertible to this court, if he said that he wasn't even at USP Thompson, that would still be a factual dispute that this court would have to weigh the credibility of versus Mr. Kahn's allegations. And that is a factual dispute that should be resolved, that this court is not equipped to resolve. It's not the proper forum to resolve. I see I'm almost out of time, and I would just conclude on the final point that nexus is not a problem here. Mr. Kahn, under any articulation of the standard, satisfies nexus. He has his underlying legal claims are exactly the same as his imminent danger claims. There is a clearly traceable connection, and even under any other tests that other circuits have adopted, he he passes. Thank you, Miss Gabby. Thank you. Thank you. You and your team were appointed by the court to present arguments supporting appellant in this matter, and the court thanks you for your assistance. We'll take this case under submission.
judges: Srinivasan, Wilkins, Walker